# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES JAMIL GARRETT,<br><br>  Plaintiff,<br><br>v.<br><br>DR. NGOZI IGBINOSA,<br><br>  Defendant. | CASE NO. 1:16-cv-00259-LJO-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS NON-COGNIZABLE CLAIMS**<br><br>(ECF No. 20)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff is a state prisoner proceeding pro se in this civil rights action filed pursuant to 42 U.S.C. § 1983. He has consented to Magistrate Judge jurisdiction. (ECF No. 5.) Defendant declined to consent to Magistrate judge jurisdiction. (ECF No. 45.)

On February 03, 2017, the Court screened Plaintiff's second amended complaint (ECF No. 20) and found it states cognizable First Amendment retaliation, and Eighth Amendment deliberate indifference claims against Defendant Igbinosa. (ECF No. 21.) The remaining claims were dismissed with prejudice for failure to state a claim.

**I.** **Williams v. King**

Federal courts are under a continuing duty to confirm their jurisdictional power and are "obliged to inquire sua sponte whenever a doubt arises as to [its] existence[.]" Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977) (citations omitted). On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not

served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil claim. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Accordingly, the Court held that a Magistrate Judge does not have jurisdiction to dismiss a claim with prejudice during screening even if the plaintiff has consented to Magistrate Judge jurisdiction. Id.

Here, Defendant was not yet served at the time that the Court screened the second amended complaint and therefore had not appeared or consented to Magistrate Judge jurisdiction. Because Defendant had not consented, the undersigned's dismissal of Plaintiff's claims is invalid under Williams. Because the undersigned nevertheless stands by the analysis in his previous screening order, he will below recommend to the District Judge that the non-cognizable claims be dismissed.

## II. Findings and Recommendations on Second Amended Complaint

### A. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Pleading Standard

Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights "under color" of state law. 42 U.S.C. § 1983. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### C. Plaintiff's Allegations

The acts giving rise to this action occurred while Plaintiff was detained at the California Substance Abuse Treatment Facility ("CSATF"), in Corcoran, California. He names a single defendant: Dr. Ngozi Igbinosa, his primary care provider ("PCP") at CSATF.

Plaintiff's allegations are not entirely clear. As best the Court can determine, Plaintiff alleges as follows:

In 2011, Plaintiff contracted Valley Fever while housed at Pleasant Valley State Prison ("PVSP") in Coalinga, California. While at PVSP, Plaintiff's treating doctor provided medical care, including a prescription for Diflukin.

Plaintiff was transferred to CSATF and was placed under the care of Defendant Dr. Ngozi Igbinosa. Defendant Igbinosa is the wife of the Chief Medical Officer at PVSP, Dr. Felix Igbinosa, a named defendant in a class action filed by Plaintiff and other inmates regarding their contraction of Valley Fever.

On Plaintiff's first visit with Defendant Igbinosa asked about her relationship to Dr. Felix Igbinosa. Defendant Igbinosa responded, "I know who you are. I want you to know, I'm not afraid of you or your big time attorney!"

After Plaintiff learned of the Defendant's relationship to Dr. Felix Igbinosa, he then immediately sought another primary care doctor on the ground that there was a conflict of interest, but his request was denied.

Defendant Igbinosa, as Plaintiff's primary care doctor, discontinued Plaintiff's prescription for Diflukin, opting instead for a generic substitute, Fluconazale. Plaintiff experienced severe side effects.

Although Dr. Igbinosa was aware that this generic substitute caused Plaintiff to suffer severe side-effects, she refused to change the medication. Plaintiff's side-effects became so unbearable that he was scheduled for a tele-med appointment with another doctor, Dr. Smith, who ordered Plaintiff to stop taking the generic medication.

On Saturday, October 3, 2015, Plaintiff injured himself during a fall. Dr. Igbinosa was off of work that day, but she gave care instructions to a nurse who called the doctor at home. The pleading suggests that Dr. Igbinosa prescribed 400 mg of Ibuprofen in response to the fall, but this did not alleviate Plaintiff's pain.

On October 5, 2015, Plaintiff was taken by a non-party correctional officer to see Dr. Igbinosa for a follow-up to his fall. Plaintiff waited for hours in pain to see Dr. Igbinosa. He later learned that the Defendant asked her staff, "How we're gonna deal with Mr. Garrett today?" Plaintiff claims this conduct demonstrates a purposeful indifference to Plaintiff's medical needs.

He seeks damages.

**D. Analysis**

**1. Eighth Amendment**

The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits deliberate indifference to the serious medical needs of prisoners. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). A claim of medical indifference requires (1) a serious

4

medical need, and (2) a deliberately indifferent response by defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The deliberate indifference standard is met by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Where a prisoner alleges deliberate indifference based on a delay in medical treatment, the prisoner must show that the delay led to further injury. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); McGuckin, 974 F.2d at 1060a; Shapley v. Nevada Bd. Of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (brackets omitted) (quoting Gibson, 290 F.3d at 1188). Mere indifference, negligence, or medical malpractice is not sufficient to support the claim. Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 87, 105-06 (1976)). A prisoner can establish deliberate indifference by showing that officials intentionally interfered with his medical treatment for reasons unrelated to the prisoner's medical needs. See Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir. 1992); Estelle, 429 U.S. at 105.

An allegation that prison officials deliberately ignored a prisoner's complaint about the ineffective nature of prescribed pain medication and the pain being suffered as a result can, in some circumstances, give rise to a constitutional claim. See Chess v. Dovey, No. CIV S-07-1767 LKK DAD P, 2011 WL 567375, at *21 (E.D. Cal. Feb. 15, 2011) (denying summary judgment on Eighth Amendment claim where the doctor "ignored plaintiff's complaint about the ineffective nature of the Tylenol, aspirin and other medications he was being given and the pain being suffered as a result"); Franklin v.

Dudley, No. 2:07-cv-2259 FCD KJN P, 2010 WL 5477693, at *6 (E.D. Cal. Dec. 29, 2010) (existence of triable issue of fact as to whether defendant violated Eighth Amendment precluded the granting of summary judgment where plaintiff was previously prescribed narcotic pain medication but now was given only Motrin, Naprosyn, and Tylenol under prison's no-narcotic policy). However, a prisoner does not have a constitutional right to the medication of his choice, and a mere difference of opinion regarding appropriate treatment and pain medication is insufficient to give rise to a constitutional claim. Toguchi, 391 F.3d at 1058; Wilson v. Borg, No. 95-15720, 1995 WL 571481, at *2 (9th Cir. Sept. 27, 1995); Smith v. Norrish, No. 94-16906, 1995 WL 267126, at *1 (9th Cir. May 5, 1995); McMican v. Lewis, No. 94-16676, 1995 WL 247177, at *2 (9th Cir. Apr. 27, 1995).

Plaintiff's allegations of Valley Fever, pain and mobility challenges are sufficient to allege a serious medical need. Jett, 439 F.3d at 1096 (a "serious medical need" may be shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'"); McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.").

Plaintiff has adequately alleged facts to show that Defendant acted with deliberate indifference when she continued the prescription for a generic medication despite being informed that Plaintiff was suffering painful side effects from it. This is sufficient to state a medical indifference claim.

Plaintiff's remaining allegations, however, are insufficient. Plaintiff asserts, for example, that he waited in pain for hours on October 5, 2015, to see Dr. Igbinosa, but he makes no allegation that this delay was purposeful. Dr. Igbinosa's asking her staff how to deal with Plaintiff that day does not suggest that the delay to see Plaintiff was intentional.

Similarly, to the extent Plaintiff claims that Dr. Igbinosa prescribed an ineffective dose of pain medication following his October 3, 2015, fall, nothing in the pleading suggests she knowingly did so.

## B. First Amendment Retaliation

Plaintiff also appears to allege that Defendant retaliated against him for filing a lawsuit against Defendant's husband.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The second element focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

In terms of the third prerequisite, pursuing a civil rights legal action is protected activity under the First Amendment. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts

would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300). With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

Plaintiff claims that, because of the civil rights action filed against Defendant's husband, Defendant retaliated against Plaintiff by refusing to properly treat him. To demonstrate motive and knowledge of the lawsuit, Plaintiff alleges that he asked Defendant if she was Dr. Felix Igbinosa's spouse following his transfer from PVSP, and that Defendant indicated that she knew about the lawsuit and Plaintiff's involvement in it. When he learned of the relationship between the two, he asked for another doctor. Plaintiff also alleges that Defendant Dr. Igbinosa, without any legitimate correctional goal, failed to treat him properly because he was a Plaintiff in the lawsuit. Plaintiff's pleading satisfies the criteria for a retaliation claim. The Court therefore finds that Plaintiff has asserted a cognizable First Amendment retaliation claim.

**III.    Conclusion**

Plaintiff's complaint states a First Amendment claim against Defendant as well as an Eighth Amendment claim based on the fact that she continued to prescribe Plaintiff a generic medication even though he experienced side effects. However, his remaining Eighth Amendment claims are not cognizable as pled.

Accordingly, IT IS HEREBY RECOMMENDED that this action continue to proceed only on Plaintiff's Eighth Amendment and First Amendment claims against Defendant Igbinosa as described herein; and that the remaining Eighth Amendment claims be DISMISSED with prejudice.

These findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, the

parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: April 3, 2018  /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE